[Cite as *Cincinnati v. State*, 2012-Ohio-3162.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, | : | APPEAL NO. C-110680 |
| | | TRIAL NO. A-1005917 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| STATE OF OHIO, | : | |
| | | |
| Defendant, | : | |
| | | |
| and | : | |
| | | |
| CINCINNATI ORGANIZED AND | : | |
| DEDICATED EMPLOYEES, | | |
| | : | |
| Defendant-Appellee. | | |
| | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 13, 2012

*John Curp*, City Solicitor, and *Richard Ganulin*, Assistant City Solicitor, for Plaintiff-Appellant,

*Minnillo & Jenkins Co., LPA*, *Christian A. Jenkins, Amy Gullifer*, and *Niroshan Wijesooriya*, for Defendant-Appellee.

Please note:  This case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1} Plaintiff-appellant city of Cincinnati appeals from a decision of the Hamilton County Court of Common Pleas, granting summary judgment in favor of defendant-appellee Cincinnati Organized and Dedicated Employees ("CODE"). The city had filed a declaratory judgment action asking the court to declare a city ordinance that required city employees to live in the state of Ohio to be lawful. We affirm the trial court's judgment.

{¶2} The record shows that the city is a home-rule chartered municipal corporation under the Ohio Constitution. CODE is the exclusive representative for purposes of collective bargaining for approximately 850 city employees.

{¶3} In 2006, the Ohio legislature enacted R.C. 9.481, which generally prohibited political subdivisions from imposing residency requirements on employees. Subsequently, in *Lima v. State*, 122 Ohio St.3d 155 , 2009-Ohio-2597, 909 N.E.2d 616, the Ohio Supreme Court held that R.C. 9.481 was validly enacted under the general welfare clause of the Ohio Constitution and that it, therefore, prevailed over conflicting residency laws of political subdivisions. *Id.* at ¶ 1; *Ohio Patrolmen's Benevolent Assn. v. Perrysburg*, 6th Dist. No. WD-10-033, 2011-Ohio-644, ¶ 21; *Missig v. C/O Cleveland Civil Serv. Comm.*, 8th Dist. No. 91699, 2010-Ohio-2595, ¶ 2.

{¶4} In 2010, the city amended Cincinnati Municipal Code 308-83(a) to provide that "Except as otherwise provided herein, all employees appointed to positions in the city service may only reside within the geographical boundaries of the State of Ohio." CODE filed a grievance contesting that requirement. An arbitrator dismissed the grievance concluding that the issue of whether R.C. 9.481

permitted the city to require employees to reside in the state of Ohio was "a question of external law and therefore beyond the authority of the Arbitrator to determine."

{¶5}    The city subsequently filed a complaint for a declaratory judgment that R.C. 9.481 did not override Cincinnati Municipal Code 308-83(a) and did not prevent the city from requiring that city employees reside in the state of Ohio. CODE filed a counterclaim in which it asked the court to declare that Cincinnati Municipal Code 308-83(a) was void and that CODE members had the right to reside any place they desired, including outside of the state of Ohio.

{¶6}    Both parties filed motions for summary judgment. After examining the provisions of R.C. 9.481, the trial court found that employees of political subdivisions "have the right to reside any place they desire without geographical limitation[.]"  It granted CODE's motion for summary judgment and denied the city's. This appeal followed.

{¶7}    In its sole assignment of error, the city contends that the trial court erred in granting summary judgment in favor of CODE. It argues that the trial court failed to properly apply the rules of statutory construction in finding that Cincinnati Municipal Code 308.83(a) conflicted with R.C. 9.481. This assignment of error is not well taken.

{¶8}    The main goal of statutory construction is to determine and give effect to the legislature's intent. *Basic Distrib. Corp. v. Ohio Dept. of Taxation*, 94 Ohio St.3d 287, 291, 762 N.E.2d 979 (2002); *Bank of Am., NA v. Omega Design/Build Group, LLC*, 1st Dist. No. C-100018, 2011-Ohio-1650, ¶ 27. Courts must look first to the language of the statute itself to determine the legislative intent. *Zumwalde v. Madeira and Indian Hill Joint Fire Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, 946

N.E.2d 748, ¶ 22-23; *In re Burchfield*, 51 Ohio App.3d 148, 152, 555 N.E.2d 325 (4th Dist.1988).

{¶9}   Courts must also evaluate the statute as a whole. *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 20-21; *Melampy v. Evans Landscaping, Inc.*, 12th Dist. No. CA2011-03-045, 2012-Ohio-675, ¶ 18.  They have a duty to give effect to all of the words used in the statute and may not delete words or insert words that are not used.  *Bernardini v. Bd. of Edn.*, 58 Ohio St.2d 1, 4, 387 N.E.2d 1222 (1979); *In re Estate of Myers*, 1st Dist. No. C-940828, 1995 Ohio App. Lexis 5790 (Dec. 29, 1995), *4; *Burchfield* at 152.

{¶10}  R.C. 9.481 is entitled "Political subdivisions generally prohibited from imposing residency requirements on employees."  Subsection (A) is a definitional section.  R.C. 9.481(B)(1) states that "[e]xcept as otherwise provided in division (B)(2) of this section, no political subdivision shall require any of its employees, as a condition of employment, to reside in any specific area of the state."  Subsection (B)(2)(b) provides an exception that permits localities to require certain employees to live no farther away than adjacent counties to "ensure adequate response times by certain employees of political subdivisions to emergencies or disasters while ensuring that those employees generally are free to reside throughout the state[.]"  Finally, subsection (C) states that "[e]xcept as provided in division (B)(2) of this section, employees of political subdivisions of this state have the right to reside any place they desire."

{¶11}  When viewed in its entirety, the structure of the statute is clear.  It is divided into three parts.  Subsection (A) provides the definitions of certain terms.  Subsection (B) outlines the exceptions to the general rule set forth in subsection (C),

which is that employees of political subdivisions "have the right to reside any place they desire."

{¶12} The trial court correctly stated that "subsection (C) is a statement of law." It found that the language in subsections (B)(1) and (B)(2) referring to "the state" was not "sufficient to overcome the clear and unambiguous language contained in subsection (C) that allows public subdivision employees, who do not fall [within] the scope of subsection (B)(2)(b) to reside wherever they want without limitation."

{¶13} The court noted that subsection (B)(1) is also a statement of law that prohibits a political subdivision from preventing employees from residing in any specific area of the state except as provided in subsection (B)(2)(b). It went on to state:

> Because subsection (B)(1) only stops a political subdivision from preventing an employee residing in any specific area of the state, there is an implication that a political subdivision could prevent an employee from living outside the state. However, this is not the same as expressly stating that the political subdivision has the right to prevent its employees from living out of state. And the language of subsection (B)(1) is not sufficient to trump the clear and unambiguous language found in subsection (C).

{¶14} Using that logic, the trial court went on to conclude that "public subdivision employees, pursuant to R.C. § 9.481(C), have the right to reside any place they desire without geographical limitation except for those certain employees who fall within the exception of R.C. § 9.481(B)(2)(b)." We agree with the trial court's reasoning.

{¶15} If the legislature had intended to limit the broad right of public employees to live any place they desire as granted in subsection (C), it could have done so by including the phrase "in this state" as it did in subsection (B). But it did not, and we will not rewrite the statute by adding words the legislature did not use. *See Seeley v. Expert, Inc.*, 26 Ohio St.2d 61, 71, 269 N.E.2d 121 (1971); *Myers*, 1995 Ohio App. Lexis 5790, at *4.

{¶16} The city's interpretation of the statute would render subsection (C) superfluous, while the trial court's result gives each section meaning. We must presume that the legislature, in enacting statutes, intended the entire statute to be effective. R.C. 1.47(B). "To determine legislative intent, 'significance and effect should be accorded to every word, phrase, sentence and part thereof, if possible.' " *State ex rel. Nation Bldg. Technical Academy v. Dept. of Edn.*, 123 Ohio St.3d 35, 2009-Ohio-4084, 913 N.E.2d 977, ¶ 18, quoting *State v. Wilson*, 77 Ohio St.3d 334, 336-337, 673 N.E.2d 1347 (1997).

{¶17} Consequently, we hold that Cincinnati Municipal Code 308-83(a) is in conflict with R.C. 9.481, and it is, therefore, void. We overrule the city's assignment of error and affirm the trial court's decision granting summary judgment in favor of CODE.

Judgment affirmed.

SUNDERMANN, P.J., and HENDON, J., concur.

Please note:

The court has recorded its own entry this date.